UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JACQUELINE MARIE GOFF,

                        Plaintiff,

v.                                              5:14-CV-1007
                                                (GTS)
CAROLYN W. COLVIN,
Commissioner of Social Security,

                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

OLINSKY LAW GROUP                               HOWARD D. OLINSKY, ESQ.
 Counsel for Plaintiff
One Park Place
300 South State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                     FERGUS KAISER ESQ.
OFFICE OF REG'L GEN. COUNSEL-REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## <u>DECISION and ORDER</u>

    Currently before the Court, in this Social Security action filed by Jacqueline Marie

Goff ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 12, 16.)  For the reasons set forth

below, Plaintiff's motion is denied and Defendant's motion is granted.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born on May 9, 1984. (T. 310.)  She completed 8th grade. (T. 50-51.) She worked full time as housekeeper. (T. 316.)  Generally, her alleged disability consists of allergies, asthma, bipolar disorder, carpal tunnel syndrome, methicillin-resistant staphylococcus aureus ("MRSA"), hearing loss in the right ear, right rotator cuff injury and back pain. (T. 315.)  Her alleged disability onset date is July 25, 2008. (T. 310.) Her date last insured is September 30, 2012. (T. 303.)

### B.     Procedural History

On August 12, 2009, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits; she also filed a Title XVI application for supplemental security income. (T. 310.) Her application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ").  On August 3, 2010, she appeared before ALJ Tielens.  (T. 72-113.)  On September 22, 2010 ALJ Tielens issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 117-139.)  On February 3, 2012, the Appeals Council ("AC") granted Plaintiff's request for review. (T. 140-145.) On November 1, 2012 Plaintiff appeared before ALJ Marie Greener. (T. 43-71.) On January 23, 2013 ALJ Greener issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 18-42.) On May 16, 2012 the AC denied Plaintiff's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

**C.    The ALJ's Decision**

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law.  (T. 23-35.)  First, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (T. 23.)  Second, the ALJ found Plaintiff had the severe impairments of right scapular strain, bipolar disorder, and borderline intellectual functioning.  (*Id.*) The ALJ determined Plaintiff's medically determinable impairments of asthma, carpal tunnel syndrome, gastroesophageal reflux disease ("GERD"), De Quevain's tendinitis and pulmonary embolism were non-severe impairments. (T. 24.)  Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 25.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to "perform light work . . . . except with the following additional limitations; [Plaintiff] is able to make frequent but not constant use of the right upper extremity; and can only do low-stress work by which is meant routine daily tasks which do not change in pace or location on a daily basis, and which do not ordinarily require confrontation with others such as arguing with customers, or restraining or detaining individuals." (T. 26.)[1] Fifth, the ALJ found Plaintiff had past relevant work as a housekeeper and was capable of performing such work.  (T. 35.)

---

[1]        Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b) and 416.967(b).

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes four separate arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues the ALJ's RFC determination is unsupported by substantial evidence; specifically, (1) the ALJ failed to reconcile the opinions of Kalyani Ganesh, M.D., Michael Boucher, Ph.D. and L. Blackwell, M.D. and (2) the ALJ misevaluated the opinion of Elaine Scherba-German, N.P.  (Dkt. No. 12 at 10-16 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ failed to adequately explain the weight given to Richard Feldman, M.D.'s opinion and failed to comply with the AC remand order.  (*Id.* at 16-18.)  Third, Plaintiff argues the ALJ's credibility finding is unsupported by substantial evidence.  (*Id.* at 18-20.) Fourth, and lastly, Plaintiff argues the ALJ's step four determination is unsupported by substantial evidence. (*Id.* at 20-21.)

### B.    Defendant's Arguments

In response, Defendant makes essentially three arguments.  First, Defendant argues the ALJ properly evaluated the medical opinion evidence.  (Dkt. No. 16 at 6-13 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ properly assessed Plaintiff's credibility.  (*Id.* at 13-16.)  Third, and lastly, Defendant argues the ALJ's step four determination is supported by substantial evidence.  (*Id.* at 16-17.)

## III.   RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were

not applied, or the decision was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine

whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §

404.1520.  The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The

five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.   ANALYSIS

### A.    Whether the ALJ Properly Evaluated Medical Opinion Evidence

After carefully considering the matter, the Court answers this question in the

affirmative, for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 16 at

6-11 [Def.'s Mem. of Law].) The Court would add the following analysis.

The Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because she failed to include limitations in these opinions in her RFC analysis. (Dkt. No. 12 at 11 [Pl.'s Mem. of Law].)

Dr. Ganesh performed a consultative examine on October 5, 2009. (T. 587-590.) He observed Plaintiff was in no acute distress, could walk on heels and toes, could not squat in full, and needed no help changing for the exam or getting on and off the exam table. (T. 588.) He further opined Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally and full rotary movement bilaterally. (T. 589.) Plaintiff showed no scoliosis, kyphosis, or abnormality in thoracic spine. (*Id.*) Plaintiff's lumbar spine showed flexion 60 degrees, extension 15 degrees, and lateral flexion 10 degrees and Plaintiff could not do rotation. (*Id.*) Dr. Ganesh observed full range of motion in her shoulders, elbows, forearms, and wrists; as well as, full range of motion in her lower extremities. (*Id.*) In his medical source statement, Dr. Ganesh stated Plaintiff had "no gross physical limitation to sitting, standing, or walking. Mild limitation to lifting, carrying, pushing, and pulling. Should avoid known respiratory irritants." (T. 590.) The ALJ afforded Dr. Ganesh's opinion "significant weight." (T. 34.)

Plaintiff argues the ALJ's RFC failed to take into consideration Dr. Ganesh's opinion Plaintiff "should avoid known respiratory irritants." (Dkt. No. 12 at 12 [Pl.'s Mem. of Law].) Plaintiff argues failure to include such a limitation harmed Plaintiff, because environmental limitations erode the potential occupational base. (*Id.* [Pl.'s Mem. of Law].) Defendant counters that failure to include this particular environmental limitation was harmless as there is no other evidence in the record that Plaintiff needed to avoid "known irritants" and the impact on the occupational base in minimal. (Dkt. No. 16 at 7 [Def.'s Mem. of Law].)

At step two of the sequential process the ALJ determined Plaintiff's asthma was a non-severe impairment because it had a "very slight" functional impact. (T. 24.) The ALJ discussed Plaintiff's history of asthma, her medications to control her asthma, her smoking history, her lack of emergency room visits/hospitalizations due to asthma, and the overall lack of medical evidence showing frequent or severe asthma attacks. (T. 27.)

The ALJ did reconcile the RFC assessment with Dr. Ganesh's opinion. The ALJ discussed Plaintiff's asthma at step two of the sequential process and determined it was a non-severe impairment. The ALJ further discussed Plaintiff's asthma within her decision in the context of formulating an RFC. (T. 27.) Therefore, she did not err in failing to include any functional limitations within her RFC analysis pertaining to asthma, as indeed there were none. Even if the ALJ included the limitations imposed by Dr. Ganesh, the impact on the occupational base would be nominal, "[w]here a person has a medical restriction to avoid excessive amounts of noise, dust, etc., the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc." *Titles II & XVI: Capability to Do Other Work-The Medical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15 (S.S.A. 1985). Therefore, the ALJ did not err in failing to include environmental limitations in her RFC analysis.

The Plaintiff argues the ALJ failed to reconcile her RFC analysis with the opinions of Dr. Boucher, who performed a psychological evaluation of Plaintiff in 2009. (T. 468-471.) The Central New York Vocational Evaluation Services ("VESID") referred Plaintiff to Dr. Boucher for an evaluation. (T. 468.) Dr. Boucher observed Plaintiff was alert, oriented, cooperative, hard-working and appropriately dressed and groomed. (T.

469.) He noted her rate of working was moderately slower than average on most verbal tasks and mildly slower than average on most non-verbal tasks. (*Id.*)

Dr. Boucher administered cognitive screen and testing. Plaintiff's full scale IQ score was 74, her performance IQ score was 78, and her verbal IQ score was 74. (*Id.*) Dr. Boucher interpreted these scores to show Plaintiff's intellectual and cognitive functioning were in the "borderline" range. (*Id.*) In terms of memory, Dr. Boucher stated testing showed a "low average range recall." (*Id.*) He opined she should recall auditory and visual material equally well. (*Id.*) He opined she had "significant" limitations in the areas of reading, writing, and math. (T. 470.)

He opined Plaintiff should be able to handle "preparation for relatively unskilled, realistic and hands-on work if it does not require rapid performance" and "if she receiv[ed] supported employment services such as those of a job coach." (T. 470.) He recommended Plaintiff receive instructions in an auditory-verbal and/or visual-figural manner over a written manner. (T. 470.) The ALJ provided Dr. Boucher's opinion "great weight." (T. 34.)

Plaintiff essentially argues the ALJ "cherry picked" Dr. Boucher's findings, only focusing on the "promising" aspects. (Dkt. No. 12 at 12 [Pl.'s Mem. of Law].) Further, Plaintiff argues, Dr. Boucher's opinion was regarding Plaintiff's ability to "prepare" for work, not actually her ability to work. (*Id.* [Pl.'s Mem. of Law].)

In her RFC analysis the ALJ discussed Dr. Boucher's opinion accurately. She discussed his observations, testing administered and its results, limitations he imposed on Plaintiff, and his overall recommendation regarding Plaintiff's ability to work. (T. 29-30.) The Plaintiff highlights Dr. Boucher's opinion that she had significant limitations in reading, writing and math and that her rate of work is moderately slower compared to

others. (Dkt. No. 12 at 12 [Pl.'s Mem. of Law].) However, the ALJ did not ignore that opinion, in fact she specifically acknowledged this finding in her opinion. (T. 29.) Therefore, Dr. Boucher's opinion was not "cherry picked" and his limitations are reflected in the ALJ's RFC limiting Plaintiff to unskilled and "low stress" work. Further, this court agrees with Defendant, Plaintiff's argument that Dr. Boucher's opinion refers to Plaintiff's ability to "prepare" for work, and not actual work, is nonsensical. (Dkt. No. 16 at 9 [Def.'s Mem. of Law].)

Plaintiff argues the ALJ also failed to provide proper weight to the opinion of Ms. Scherba-Germain, N.P. Plaintiff received her mental health treatment from Ms. Scherb-German, N.P. On February 25, 2009, Ms. Scherba-German completed a medical report for VESID. (T. 638-639.) Therein she estimated Plaintiff's work ability to be "fair." (T. 639.) She noted Plaintiff was "very" motivated to improve herself, but she had difficulty with peer pressure and supervision. (*Id.*)

On August 12, 2010, Ms. Scherba-German completed a mental medical source statement. (T. 664-666.) Therein she stated she had been treating Plaintiff for two years. (T. 664.) She observed Plaintiff's symptoms as: decreased energy, feelings of guilt or worthlessness, mood disturbance, and impairment in impulse control. (*Id.*) She opined Plaintiff was "seriously limited, but not precluded" in her ability to accept instructions and respond appropriately to criticism from supervisors, and in her ability to deal with normal work stress. (T. 665.) She opined Plaintiff was "limited, but satisfactory" in her ability to maintain attention and concentration for two hours segments, sustain an ordinary routine without special supervision, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable

number and length of rest periods, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and use public transportation. (T. 665-666.)

On October 18, 2012, Ms. Scherba-German completed another medical source statement. (T. 684-686.) She opined Plaintiff was "unable to meet competitive standards" in her ability to work in coordination with or proximity to others without being unduly distracted, complete a normal workday and workweek without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, deal with normal work stress, interact appropriately with the general public, maintain socially appropriate behavior, and use public transportation. (T. 685-686.) She opined Plaintiff was "seriously limited, but not precluded" in her ability to maintain concentration for a two hour segment, make simple work-related decisions, and ask simple questions or request assistance. (T. 685.)

The ALJ afforded Ms. Scherba-Germain's October 2012 statement, "little weight." (T. 32.) Plaintiff argues the ALJ disregarded Ms. Scherba-German's opinion because she is not an acceptable medical source. (Dkt. No. 12 at 15 [Pl.'s Mem. of Law].)

The ALJ must consider every medical opinion of record.  20 C.F.R. §§ 404.1527(c) and 416.927(c). Acceptable medical sources are licensed physicians, psychologist, optometrists, podiatrists and qualified speech language pathologists. 20 C.F.R. §§ 404.1513(a) and 416.913(a). Nurse practitioners, however, are defined as "other sources" whose opinions may be considered with respect to the severity of the

claimant's impairment and ability to work, but cannot establish a medically determinable impairment. 20 C.F.R. §§ 404.1513(d) and 416.913(d).

The Second Circuit has found that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." *Diaz v. Shalala,* 59 F.3d 307, 314 (2d Cir. 1995). When evaluating the opinions of other sources, the ALJ may apply the same factors as are used in evaluating the medical opinions of acceptable medical sources. Such factors include the following: "how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and, any other factors that tend to support or refute the opinion." SSR 06-03p: Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are Not "Acceptable Medical Sources" in Disability Claims, 2006 WL 2329939, at *4 (S.S.A. 2006), *see also Shaw v. Chater,* 221 F.3d 126, 134 (2d Cir.2000); *Clark v. Comm'r of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir.1998). Here, the ALJ correctly applied these factors.

To be sure, an ALJ cannot discredit the opinion of an "other source" solely because it is an "other source." *See Kelly v. Astrue*, 09-CV-1359, 2011 WL 817507, at *6 (N.D.N.Y. Jan., 18, 2011)(holding that the ALJ was not free to simply disregard a licensed clinical social worker's assessment on the basis that he was not an acceptable medical source alone). However, here the ALJ did not discredit Ms. Scherba-German's opinion solely because she was not an acceptable medical source. First, the ALJ did not discredit her opinion, but provided it "little weight." Further, the ALJ reasoned her

opinion was entitled to "little weight" because it was inconsistent with the record and the Plaintiff's work history. (T. 32.)

Plaintiff argues Ms. Scherba-German's opinion is consistent with the medical evidence. (Dkt. No. 12 at 16 [Pl.'s Memo. of Law].) Plaintiff points to the fact that she left her work due to medical reasons as support for Ms. Scherba-German's opinion that she essentially can no longer work due to her mental impairments. However, a reading of the record indicates that although Plaintiff left work for medical reasons, it was due to her shoulder injury, not her mental health. (T. 51-52.)

Plaintiff argues the ALJ failed to properly assess the medical opinion of Dr. Feldman. (Dkt. No. 12 at 16 [Pl.'s Mem. of Law].) On July 26, 2012 Dr. Feldman completed a medical source statement. (T. 646-648.) He stated Plaintiff was a new patient. (T. 646.) He observed Plaintiff was "incapable of even low stress jobs." (*Id.*) In terms of exertional limitations, he opined Plaintiff could walk 2.5 city blocks without rest or severe pain; she could sit thirty minutes at one time before needing to move; she could stand thirty minutes at one time before needing to move; she could sit/stand for two hours total each in an eight hour workday; she would need to shift positions at will; she would need to take unscheduled breaks during an eight hour work day; and, she could rarely lift and carry ten pounds. (T. 647.) In terms of non-exertional limitations, he opined she could frequently look down, turn her head right or left, look up and hold head in a static position; she could rarely twist, stoop, crouch/squat, climb ladders and climb stairs; she could rarely grasp, turn and twist objects; she could rarely do fine manipulations; and she could rarely reach. (T. 647-648.) He stated she would miss more than four days per month of work, and she would "frequently" experience pain or

other symptoms severe enough to interfere with attention and concentration needed to perform simple work tasks. (T. 648.)

The ALJ stated Dr. Feldman's opinion "cannot necessarily be taken to reflect [Plaintiff's] abilities or limitations as of the alleged disability onset date" and further, his report is not based on a "longitudinal knowledge of her condition." (T. 30.) The ALJ stated the opinions of Plaintiff's treating sources were given "some weight, insofar as they [were] consistent with the rest of the evidence of record." (T. 34.)

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). '

To be sure, the ALJ's decision could have provided a more in depth discussion of her exact reasoning for providing Dr. Feldman "some weight," however, she did make it clear that she relied on the short nature of his treatment of Plaintiff. (T. 30.) In making her determination, the ALJ also relied on the lack of support in the evidence for Dr. Feldman's limitations. (T. 34.) Both are relevant factors in the Regulations. The ALJ did not go into specific detail when evaluating what opinions were inconsistent with Dr. Feldman's opinion; however, overall in her decision the ALJ went into great detail discussing the medical opinions and other source opinions in the record. The ALJ also provided a summary of Dr. Feldman's opinion. (T. 30.) Therefore, the ALJ did not err in her assessment of Dr. Feldman's opinion. The ALJ reasoned that Dr. Feldman lacked a longitudinal understanding of Plaintiff's conditions and although her specific discussion

regarding his opinion did not provide concrete examples of how her opinion was inconsistent with the record, her decision provided detailed analysis of other opinions in the record and weight afforded to them.

### C. Whether the ALJ Properly Assessed Plaintiff's Credibility

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16 at 13-16 [Def.'s Mem. of Law].) The Court adds the following analysis.

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an

individual's symptoms can sometimes suggest a greater
level of severity of impairment than can be shown by the
objective medical evidence alone, an ALJ will consider the
following factors in assessing a claimant's credibility: (1)
claimant's daily activities; (2) location, duration, frequency,
and intensity of claimant's symptoms; (3) precipitating and
aggravating factors; (4) type, dosage, effectiveness, and
side effects of any medication taken to relieve symptoms; (5)
other treatment received to relieve symptoms; (6) any
measures taken by the claimant to relieve symptoms; and
(7) any other factors concerning claimant's functional
limitations and restrictions due to symptoms.

*Id.*

Here, the ALJ determined Plaintiff's medically determinable impairments "could
reasonably be expected to cause some of the alleged symptoms; however, the
[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these
symptoms are not credible." (T. 27.) Plaintiff argues (1) the ALJ failed to provide
evidence to support the conclusion that Plaintiff was "able to perform at least simple
work in an environment where she is not required to work closely with other people," (2)
the ALJ mischaracterized Dr. Smallman's opinion, and (3) the Plaintiff did not
exaggerate her claims. (Dkt. No. 12 at 19-20 [Pl.'s Mem. of Law].)

In her first claim, Plaintiff argues the ALJ failed to provide proof for the conclusion
that she could perform simple work, as long as she does not have to work in close
proximity to other people. (*Id.* at 19.) Plaintiff argues evidence supports the conclusion
that her mental impairments are as severe as alleged, i.e. disabling. (*Id.*) In support of
her argument Plaintiff points to Dr. Barry's opinion that Plaintiff was unable to manage
her own funds. (*Id.*)

In making her credibility determination regarding Plaintiff's mental health
limitations the ALJ relied on the opinion of Dr. Barry, whom she afforded "significant

weight;" Ms. Scherba-Germain, whom she afforded "little weight;" and Dr. Boucher whom she afforded "great weight." (T. 34.) The opinions of Dr. Boucher and Ms. Scherba-Germain were previously discussed in Part IV.A.

Dr. Barry opined Plaintiff was capable of following and understanding simple directions and instructions. (T. 584.) Dr. Barry observed Plaintiff "appear[ed]" to have difficulty handling stressors and "gets agitated and frustrated easily." (T. 585.) Dr. Barry opined Plaintiff would "need assistance" managing funds; however, he did not opine she was incapable of managing funds. (T. 585.)

The ALJ also relied on Plaintiff's written testimony regarding her activities of daily living in making her credibility determination. (T. 33.) Plaintiff testified she took care of her needs and her young children's, completed household chores and went shopping. (T. 324-331.) Further, she stated she had difficulty getting along with others, but never lost a job due to her difficulty getting along with people. (T. 330-331.) The ALJ properly relied on objective medical evidence in the file, and Plaintiff's own testimony, in making her credibility determination that Plaintiff could perform "simple work" which did not require Plaintiff to "work closely with others."

Plaintiff argues the ALJ improperly relied on Thomas V. Smallman, M.D.'s description of her "mild problem." (Dkt. No. 12 at 19 [Pl.'s Mem. of Law].) Plaintiff argues Dr. Smallman noted Plaintiff had a "mild problem" with sedentary work and therefore his opinion supports a more restrictive RFC. (*Id.* [Pl.'s Mem. of Law].) On November 5, 2008, Dr. Smallman opined Plaintiff had a "mild problem which [he did] not think [was] disabling." (T. 628.) He then stated she has a "mild problem that is consistent with sedentary work." (*Id.*) However, Dr. Smallman did not define "sedentary work" and therefore there is no way to know what was meant by sedentary work, or if it correlates

with the Regulation's definition of sedentary work. Further, Dr. Smallman stated Plaintiff was not compliant with treatment or medication and was discharged from his care. (*Id.*) Therefore, the ALJ properly evaluated Dr. Smallman's opinion.

Third, Plaintiff takes issue with the ALJ's conclusion that Plaintiff's testimony was "replete with exaggerations." (T. 33.) Specifically, Plaintiff points out that her testimony that she broke both wrists was true and the ALJ erroneously labeled her allegation an exaggeration. (Dkt. No. 12 at 20 [Pl.'s Mem. of Law].) Medical imaging supported Plaintiff's allegation she did in fact break both wrists. (T. 680.) Although Plaintiff is correct, this one inaccuracy in the ALJ's reasoning is not so egregious as to void her entire credibility determination, which is otherwise based in sound reasoning and in accordance with the Regulations.

### D. Whether the ALJ's Step Four Determination Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 12 at 20 [Pl.'s Mem. of Law].) The Court adds the following analysis.

At Step Four of the sequential evaluation process for determining whether an individual is disabled, an ALJ must determine whether the plaintiff has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(f) and 416.920(f). The term past relevant work is defined as "work that [the claimant] has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it. 20 C.F.R. §§ 404.1560(b)(1) and 416.960(b)(1).

A claimant will be found not disabled if it is determined that he has the RFC to perform: "1. The actual functional demands and job duties of a particular past relevant job; or 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61"Titles II and XVI: Past Relevant Work-The Particular Job or the Occupation as Generally Performed." *Jock v. Harris,* 651 F.2d 133, 135 (2d Cir. 1981) (noting that "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally").

Plaintiff argues the ALJ failed to make specific inquiry into the relevant demands of Plaintiff's past work as a cleaner. (Dkt. No. 12 at 20 [Pl.'s Mem. of Law].) The ALJ concluded Plaintiff could perform her past relevant work as a cleaner (DOT 323.687-014). (T. 35.)[2] In making her step four determination the ALJ relied on Plaintiff's testimony and the testimony of a VE. (T. 35.)

Plaintiff completed a Work History Report in September of 2009. (T. 333-340.) Plaintiff described her job as vacuuming, cleaning rooms, and reporting which rooms were completed. (T. 334.) Plaintiff also described her work as a hotel housekeeper in her Disability Report. Plaintiff described her job as "cleaning rooms, changing linen, changing garbage, making beds, scrubbing toilets, sinks and restocking items." (T. 316.) At the hearing Plaintiff testified her duties as a cleaner/housekeeper included cleaning rooms, laundry, and taking out the trash. (T. 51.) She further testified that she ended work due to her physical impairments. (T. 52.)

---

[2]    Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.). DOT 323.687-014.

To be sure, the record fails to provide specific testimony from Plaintiff regarding the mental demands of her past relevant work as a cleaner, and the ALJ did not inquire into the mental demands of the occupation. However, the ALJ did obtain testimony from a VE to assist in defining Plaintiff's past relevant work and to offer an opinion as to whether or not Plaintiff could perform her past relevant work given based on her RFC. The Regulations state:

> We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 C.F.R. §§ 404.1560(b)(2) and 416.960(b)(2).

As already determined in this decision, the ALJ's RFC is supported by substantial evidence. The ALJ presented a hypothetical to the VE, which ultimately became his RFC determination. Based on that hypothetical the VE testified Plaintiff could perform her past relevant work as a cleaner. (T. 66-67.) The VE further testified that based on her professional opinion, work as a cleaner was performed in a "fairly solitary manner." (T. 69.) Therefore, as the ALJ's RFC determination is supported by substantial evidence and the ALJ called on the testimony of a VE, he did not err in his step four determination that Plaintiff could perform her past relevant work.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is

**<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16)

is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**;

and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated:     June 26, 2015
              Syracuse, NY

Glenn T. Suddaby
U.S. District Judge